IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHARON WADE, et al.,                )
                                    )
            Plaintiffs,             )
                                    )
vs.                                 )            Case No. 2:09-cv-1554-TMP
                                    )
CITY OF OAKMAN, et al.,             )
                                    )
            Defendants.             )

MEMORANDUM OPINION

This cause is before the court[1] on three motions to dismiss.  On September 28, 2009, defendants Walker County, Alabama, and Walker County Sheriff John Mark Tirey filed their joint motion to dismiss all claims against them for failure to state a claim (Doc. 10).  On September 30, 2009, defendant Garve Ivey, Jr., filed a motion to dismiss the claims against him (Doc. 13), as did defendants Kevin and Pam Watkins on October 1, 2009 (Doc. 15).  After being granted two extensions, plaintiffs filed their opposition to the motions on December 4, 2009 (Doc. 31), and the motions were heard for argument on January 21, 2010.  Having now carefully considered the motions, response, and argument of counsel, the motions are due to be granted and claims against these defendants dismissed.

---

[1]  The parties consented to the exercise of dispositive jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) on January 21, 2010.  (Doc. 49).  See also Docket Entry 52.

I. <u>Legal Standard On Motion To Dismiss</u>

In addressing a motion to dismiss a complaint, the court is required to assume as true all of the well-pleaded facts in the complaint, including all reasonable inferences that can be drawn from them. Although the court must accept the factual allegations of the complaint as true, it is not required to accept legal conclusions masquerading as facts. As one district court recently reiterated:

> Federal Rule of Civil Procedure 12(b)(6) empowers the Court to grant a defendant's motion to dismiss when a complaint fails to state a claim upon which relief can be granted. The pleadings are construed broadly so that all well-pleaded facts are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. <u>Cooper v. Pate</u>, 378 U.S. 546, 546, 84 S. Ct. 1733, 12 L. Ed. 2d 1030 (1964); <u>Conner v. Tate</u>, 130 F. Supp. 2d 1370, 1373 (N.D. Ga. 2001). However, the court need not "accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).

<u>Smith v. Delta Air Lines, Inc.</u>, 422 F. Supp. 2d 1310, 1324 (N.D. Ga. 2006). Recently, the Supreme Court commented on the pleading standards of Rule 8(a) in the context of Rule 12(b)(6) dismissals, saying:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, <u>ibid.</u>; <u>Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.</u>, 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1216, pp. 235-236 (3d ed. 2004) (hereinafter <u>Wright & Miller</u>) ("[T]he pleading must contain something more ... than ... a statement of facts that merely

creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  In Twombly the Supreme Court clearly raised the threshold for factual allegations in a complaint from what is "conceivable" to what is "plausible."  Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009).  "[T]he complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), (quoting Twombly, 550 U.S. at 570, 127 S. Ct. at 1974); see also Edwards v. Prime, Inc., ___ F.3d ___, 2010 WL 1404280 (11th Cir., April 9, 2010).

The thrust and foundation of Twombly was described later by the Supreme Court in Iqbal, where the Court explained:

Two working principles underlie our decision in Twombly.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Id., at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Id., at 556, 127 S. Ct. 1955.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.
But where the well-pleaded facts do not permit the court to infer more than the mere
possibility of misconduct, the complaint has alleged – but it has not "show[n]" –
"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949-1950, 173 L. Ed. 2d 868 (2009).  The

pleading standard established in Twombly requires two things in a complaint: the factual allegations

must be more than conclusory, "threadbare recitations of the elements of a cause of action," and the

allegations must show a "plausible" claim for relief, something more than mere speculation that a

claim exists.

> Just this month, the court of appeals reiterated:
>
> Dismissal for failure to state a claim is proper if the factual allegations are not
> "enough to raise a right to relief above the speculative level."  Rivell, 520 F.3d at
> 1309 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. at 1965).  "A complaint may be
> dismissed if the facts as pled do not state a claim for relief that is plausible on its
> face."  Sinaltrainal, 578 F.3d at 1260 (citing Iqbal, 129 S. Ct. at 1950; Twombly, 550
> U.S. at 561-62, 570, 127 S. Ct. at 1968-69, 1974).  "Stated differently, the factual
> allegations in the complaint must 'possess enough heft' to set forth 'a plausible
> entitlement to relief.'"  Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276,
> 1282 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 557, 127 S. Ct. at 1966-67).

Edwards v. Prime, Inc., ___ F.3d ___, ___, 2010 WL 1404280, *8 (11th Cir., April 9, 2010) (quoting

Rivell v. Private Health Care Systems, Inc., 520 F.3d 1308, 1309 (11th Cir.2008); Sinaltrainal v.

Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009); Financial Securities Assurance, Inc. v.

Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir. 2007)).

## II. Well-Pleaded Allegations Of the Complaint

Applying these standards to the plaintiffs' First Amended Complaint, filed September 9, 2009, the plaintiffs assert the following well-pleaded factual allegations.

Plaintiffs Sharon Wade and Richard Wade are citizens of the State of Alabama, residing in Walker County. The City of Oakman is an Alabama municipality located in Walker County. At the time of these events, Richard Corey was the mayor of Oakman, and fictitious defendants John Doe and Richard Roe were, respectively, the chief of police and city prosecutor in Oakman. Fictitious defendant Jerry Roe was the Walker County jailer. Defendant Matt Webb was employed as a police officer in the City of Oakman and as a deputy in the Walker County Sheriff's Department.

Defendants Kevin and Pam Watkins are citizens of the State of Alabama, residing in Elmore County, Alabama. Defendant Garve Ivy, Jr., is an attorney with a law office in Jasper, Walker County, Alabama.

Walker County is a political subdivision of the State of Alabama, and defendant John Mark Tirey is the sheriff of Walker County.

On Saturday, August 4, 2007, Sharon Wade drove her mother, Effie Watkins, to a Texaco service station to order pizzas for use in connection with a function by her business. At that time, Effie Watkins had lived with Sharon Wade for almost two years after Ms. Watkins fell and suffered a brain injury. Defendant Kevin Watkins is plaintiff Sharon Wade's brother and the son of Effie Watkins. While Sharon Wade waited for the pizzas to be prepared, she took her mother for a drive. While driving, Sharon Wade noticed that she was being followed by defendants Kevin and Pam Watkins, her brother and sister-in-law. Wade pulled into a driveway, and the Watkins pulled in behind her, got out of their car, and approached hers. Wade rolled up her windows and locked her

5

doors.  The Watkins told Wade that they were there to get Effie Watkins.  Sharon Wade then drove off.

Wade drove to the Oakman Police Department.  When she arrived, she got out of her car, leaving Effie Watkins in the car, and began knocking on the door to the police department. Defendant Matt Webb responded to the knocking, asking Sharon Wade what she wanted.  At that moment, Kevin and Pam Watkins arrived at the police department, and Pam Watkins shouted, "You've got her where you want her now, she left her mother in a hot car."  Kevin Watkins displayed a piece of paper to Webb.  Wade returned to her car, got in, and turned on the air conditioning.  Kevin Watkins tried to grab the ignition key from Wade, knocking the car out of "park," causing the car to begin to roll.  Kevin Watkins began to shout, "She's going to get away. She's going to get away."

Webb came over to Wade's car and shouted for her to get out.  He said to her, "What kind of woman are you?  Why are you trying to kill your mother?"  Webb then arrested Wade and handcuffed her.  Wade stood handcuffed in the hot sun for about 30 minutes.  She asked to be allowed to call her "friend" Garve Ivey.  Webb then removed the handcuffs, saying "I'm going to take off your handcuffs because I can see you love your mother, and you are a good daughter who loves her mother."  Wade remained without handcuffs as they waited for a Walker County deputy to arrive to transport her to the Walker County Jail.

An unnamed deputy arrived and transported her to jail.  The deputy spoke to Garve Ivey, who told him not to put Wade "in the back," but that he would get a bondsman to bond her out of jail. At the jail, Sharon Wade was advised of her rights and charge against her, and then fingerprinted, photographed, and placed in an isolation cell just vacated by a "grungy prisoner."  At 6:00 p.m., that

evening, Sharon Wade was released on a $200 bond posted by her husband, plaintiff William Wade, and approved by Sheriff John Mark Tirey.  The appearance bond informed Wade that she was to appear in the Oakman Municipal Court on October 11, 2007, to respond to the charge of reckless endangerment.

After being released from the jail, Sharon Wade was diagnosed with scabies,[2] which she then gave to her husband and several other family members.  Sharon Wade suffered with scabies for several months.

A few days after being released from jail, Sharon Wade retained attorney Garve Ivey to represent her with respect to the charge of reckless endangerment, to file a civil suit against the City of Oakman, and to seek a guardianship of her mother, Effie Watkins.  She paid Ivey a retainer fee

---

[2]  One website, www.emedicinehealth.com, describes scabies as follows:

Scabies is a very contagious skin condition that is caused by a mite.  The mite cannot live more than three days without a human host, but it can survive up to a month when living on a human.  The mite also lays eggs in human skin, which hatch and grow into adult mites. This means that symptoms of the condition can last for months or even years.

The rash caused by scabies is extremely itchy and is sometimes called "the seven-year itch."  The rash can be subtle, and sometimes scabies is hard to diagnose.  The mite is spread from person to person by close contact. Animals can harbor a similar mite, but when the animal mite is passed to people, it cannot reproduce and dies within a few days.

Scabies affects everyone regardless of age, gender, race, social class, or personal-hygiene habits.  However, it is most common among household members and sexual partners of affected individuals.  Scabies is also common in congested areas such as nursing homes and hospitals where it can spread widely.

See also, www.wedMD.com; www.medicineNET.com .

of $5,000.  Although Ivey promised to supply a written retainer contract at a later time, he never did so.

On October 11, 2007, the date set for her court appearance, the city prosecutor continued the case indefinitely, and Wade never came to trial on the charge.  Although Wade asked Ivey to have the charge set for trial, it never was.  Ivey also did not file a notice of claim with the City of Oakman, nor did he file papers to seek the guardianship.  On July 14, 2008, Wade terminated Ivey as her attorney and demanded a refund of the $5,000 retainer fee.  Ivey refused to refund the fee.

III.  Procedural Background

Plaintiffs Sharon and William Wade filed their lawsuit against these defendants on August 3, 2009, but then substituted the First Amended Complaint on September 9, 2009, before any defendant had appeared or answered.[3]  Thus, it is the First Amended Complaint that controls plaintiffs' claims and the defendants sued.  There, the plaintiffs alleged twelve claims for relief, as follows:

---

[3] An amended complaint supplants and replaces the complaint it amends.  See Pintando v. Miami-Dade Housing Agency, 501 F.3d 1241, 1243 (11th Cir. 2007), where the court of appeals noted:

> As a general matter, "[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary."  Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation and quotation omitted); Fritz v. Standard Sec. Life Ins. Co., 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.").

See also Dukes v. Miami-Dade County, 290 Fed. Appx. 300, 301 (11th Cir., Aug. 21, 2008)("The district court correctly evaluated the motion for summary judgment in the light of allegations contained in the fourth amended complaint, which superceded the earlier complaints.").

1. <u>Count One</u> --- Defendants Corey and Webb, and fictitious defendant John Doe (chief of police of Oakman) violated Sharon Wade's Fourth and Fourteenth Amendment right not to be arrested and seized without probable cause.  Remedy is sought pursuant to 42 U.S.C. § 1983.

2. <u>Count Two</u> — Defendants Corey and Webb, and fictitious defendants John Doe and Richard Roe (Oakman city prosecutor), violated Sharon Wade's Fourth and Fourteenth Amendment rights by maliciously prosecuting her for the crime of reckless endangerment without probable cause to charge her with such offense.  A remedy is sought pursuant to 42 U.S.C. § 1983.

3. <u>Count Three</u> — Defendants Corey and Webb, and fictitious defendant John Doe (Oakman police chief) failed to intervene to prevent the violation of Sharon Wade's constitutional rights by Webb.  A remedy is sought pursuant to 42 U.S.C. § 1983.

4. <u>Count Four</u> — Defendants Corey, Webb, Ivey, and fictitious defendants John Doe (Oakman police chief) and Richard Roe (Oakman city prosecutor) conspired to violate Sharon Wade's Sixth Amendment right to a speedy trial of the charge against her by indefinitely continuing the trial of the charge.  A remedy is sought pursuant to 42 U.S.C. § 1983.

5. <u>Count Five</u> — Although this count is captioned "Municipal Liability," Sharon Wade alleges that defendant Webb and fictitious defendant Richard Roe (Oakman city prosecutor) committed the acts against Sharon Wade pursuant to a custom and practice of the City of Oakman, condoned by city policy-makers, defendants Corey and fictitious defendant John Doe (Oakman police chief).  A remedy is sought pursuant to 42 U.S.C. § 1983.

6. <u>Count Six</u> — Under Alabama state law, "all named Defendants" committed acts of assault, false arrest, unlawful imprisonment, harassment, and conspiracy, and malicious prosecution against Sharon Wade.

7. <u>Count Seven</u> — Under Alabama state law, fictitious defendant Richard Roe (Oakman city prosecutor) committed abuse of process, malicious prosecution, and "conspiracy with Defendant Ivey" against Sharon Wade.

8. <u>Count Eight</u> — Under Alabama law, defendants Kevin and Pam Watkins committed stalking, harassment, assault, slander, and conspiracy against Sharon Wade.

9. <u>Count Nine</u> — Under Alabama law, defendants City of Oakman and Corey, and fictitious defendant John Doe (Oakman police chief) failed to adequately train and

supervise defendant Webb and fictitious defendant Richard Roe (Oakman city prosecutor), and are therefore responsible for the injuries they caused Sharon Wade.

10. <u>Count Ten</u> — Under Alabama law, defendants Walker County and Sheriff John Mark Tirey failed to adequately train and supervise defendant Webb and fictitious defendant Jerry Roe (Walker County chief jailer), resulting in Sharon Wade being subjected to false arrest, unlawful imprisonment, assault, and exposure to an "unclean jail" from which she contracted scabies.

11. <u>Count Eleven</u> — Under Alabama state law, defendant Ivey violated the Alabama Legal Services Act by failing to carry out the matters for which he was retained by Sharon Wade, and committed breach of contract, misrepresentation, and conspiracy with defendant Corey and fictitious defendant Richard Roe (Oakman city prosecutor) to deny Sharon Wade her Sixth Amendment constitutional right to a speedy trial of the charge against her.

12. <u>Count [Twelve]</u> — Under Alabama law, plaintiff William Wade lost the consortium of his wife due to the acts taken against his wife. Although no defendants are explicitly named in this count, plaintiff incorporates all other paragraphs in the complaint.

On September 28, 2009, defendants Walker County, Alabama, and Walker County Sheriff John Mark Tirey filed their joint motion to dismiss all claims against them for failure to state a claim (Doc. 10). On September 30, 2009, defendant Garve Ivey, Jr., filed a motion to dismiss the claims against him (Doc. 13), arguing that the court lacks subject-matter jurisdiction over the claim against him. Defendants Kevin and Pam Watkins filed their motion to dismiss the complaint on October 1, 2009 (Doc. 15), asserting the complaint against them should be dismissed for failure to state a claim.

## IV. <u>Discussion</u>

Taking the motions to dismiss in turn, the court finds that the motion by Walker County and Sheriff John Mark Tirey is due to be granted; the motion on behalf of Garve Ivey, Jr., is due to be

granted for want of federal subject-matter jurisdiction; the motion on behalf of Pam Watkins is due to be granted; and the motion for Kevin Watkins is due to be granted on every claim except Sharon Wade's claim for the tort of assault.

    *A.  Walker County and Sheriff Tirey*

The "shotgun" nature of the allegations in the complaint makes is difficult to identify with certainty all of the claims the plaintiffs are attempting to assert.  Defendants Walker County and Sheriff Tirey are named explicitly as defendants only in Count Ten, where it is alleged that they failed to train and supervise Webb and fictitious defendant Jerry Roe to prevent them from subjecting Sharon Wade to a false arrest, unlawful imprisonment, assault, and exposure to an "unclean jail" from which she contracted scabies.  Nonetheless, Count Six alleges that "all named Defendants," presumably including Walker County and Sheriff Tirey, committed acts of assault, false arrest, unlawful imprisonment, harassment, and conspiracy, and malicious prosecution against Sharon Wade.  Finally, Count [Twelve] alleges a derivative claim of loss of consortium for William Wade based on the alleged injuries to his wife, Sharon.  Consistent among all of these counts is the fact that they are grounded on state law, not federal law.

Sheriff Tirey is sued both individually and in his official capacity as Sheriff of Walker County.  In both capacities, however, he is entitled to forms of immunity protecting him from suit under Alabama law.  For purposes of Alabama law, suits against sheriffs in their official capacity is the same as suing the State of Alabama, which is barred by the sovereign immunity codified in the Alabama Constitution at Article I, Section 14.  Sheriffs are executive officers of the State.  In <u>Ex parte Davis</u>, 930 So. 2d 497 (Ala. 2005), the Alabama Supreme Court held that "[A]n action against a sheriff... for damages arising out of the performance of his duties is 'essentially a suit against the

state'")(quoting <u>Ex parte Blankenship</u>, 893 So. 2d 303, 305 (Ala. 2004)(quoting <u>Parker v. Amerson</u>, 519 So. 2d 442, 445 (Ala. 1987), quoting in turn <u>Montiel v. Holcombe</u>, 240 Ala. 352, 354, 199 So. 245, 245 (1940)).  Alabama has not surrendered its sovereign immunity; indeed, Article I, Section 14 expressly states it as a constitutional provision.  Thus, the suit against Tirey  in his *official* capacity is barred by sovereign immunity as a suit against the State itself.

Sheriff Tirey also is entitled to discretionary or "state-actor" immunity insofar as the complaint attempts to allege claims against him personally.  Under <u>Ex parte Cranman</u>, 792 So. 2d 392 (Ala.2000), persons acting in the capacity of a state agent or employee are entitled to "state-actor" immunity against state-law claims in the exercise of judgment.  The Alabama Supreme Court describe five categories of employee actions which are immune from personal liability, as follows:

> In order to simplify the analysis of State-agent immunity issues, <u>Cranman</u> suggested certain categories of State-agent action where agents are immune in the exercise of their judgment, such as, for example, cases where an agent is:
>
> > (2) *exercising his or her judgment in the administration* of a department or agency of government, including, but not limited to, examples such as:
> >
> > (a) making administrative adjudications;
> >
> > (b) allocating resources;
> >
> > (c) negotiating contracts;
> >
> > (d) hiring, firing, transferring, assigning, or *supervising* personnel; or
> >
> > (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner....

12

Ex parte Hudson, 866 So. 2d 1115, 1117-1118 (Ala. 2003) (italics added) (quoting Ex parte Cranman, 792 So. 2d 392 (Ala.2000)); see also Ex parte Randall, 971 So. 2d 652 (Ala. 2007).

In the case before the court, the training and supervision needs of subordinate employees engaged in law enforcement activities is precisely the type of discretionary, judgment-based decisions that are immune under Cranman. Whether the sheriff's department should shift resources and funding to training, what type of training, and the extent of training are all judgment decisions a sheriff must make in the administrative operation of his executive department. Thus, to the extent that plaintiffs attempt to hold Sheriff Tirey personally liable for not providing more or different training to Webb or Jerry Roe, or more or different supervision of them, such acts and decisions fall within Sheriff Tirey's discretion in the operation of his department and, as such, are shielded from personal liability under the Cranman doctrine.

Furthermore, in addition to Sheriff Tirey's immunity, it must be observed that under the allegations of plaintiffs' own complaint, Webb was not acting in his capacity as a Walker County deputy at the time he arrested Sharon Wade. Even she identifies him as an Oakman police officer. To the extent, therefore, that she complains that Webb's actions resulted in a false arrest, unlawful imprisonment, and assault, there is no proximate cause nexus between any failure of Sheriff Tirey to provide training and supervision and the injuries suffered by Wade. She was not arrested by an officer for whom Sheriff Tirey was responsible.

Further still, insofar as plaintiffs allege that Sheriff Tirey *personally* was aware of and approved of Sharon Wade's incarceration[4] in the Walker County Jail, he was doing nothing more

---

[4] Other than alleging that Sheriff Tirey approved the $200 bond posted by William Wade for Sharon's release from jail, the plaintiffs do not allege any facts indicating that it is plausible that Sheriff Tirey was aware of and approved of Wade's incarceration. The arrest occurred on a Saturday

than carrying out one of his law enforcement responsibilities, for which he is entitled to Cranman immunity.  When presented with a person apparently arrested lawfully by a law-enforcement officer, Sheriff Tirey was required, at the very least, to make a judgment as to whether the incarceration was illegal or irregular.  For a state-actor like Sheriff Tirey, the exercise of that judgment is immune from liability under state law.

The same is true with respect to any failure to train or supervise the fictitious defendant, Jerry Roe, the chief jailer.[5]  The same considerations underlying immunity with respect to the training and supervision of Webb, as a deputy, also apply to Jerry Roe as a jailer.  Such questions require the sheriff to exercise judgment in the allocation of resources, manner and method of training, and necessity of training and supervision.  All are immune under Cranman.

Finally, as to Walker County, it is now well-settled that the sheriff is responsible for operating his department and the jail, and that a county's only responsibility to build a jail and "maintain" it by providing funding to the sheriff to do so.  Shortcomings or failures in the daily operation of the sheriff's department or the county jail are not the legal responsibility of the county. The Alabama Supreme Court has said:

> Under Alabama law, a county is not responsible for the daily administration or operation of a county jail or for overseeing inmates.  See Turquitt v. Jefferson County, 137 F.3d 1285, 1289 (11th Cir. 1998) ("We recognize that Alabama counties

---

afternoon, and there are no facts in the complaint to suggest that Sheriff Tirey knew of the arrest when it occurred or when Wade was put into the jail.  There is no allegation that he was personally present for any of these events, or knew about them until after they were finished.

[5]  It should be noted that the complaint does not allege that Sheriff Tirey *personally* was aware of the condition of the jail, and failed in his direct responsibility to operate the jail.  Rather, the claims alleged against Sheriff Tirey all state that he failed in his duty to train and supervise Jerry Roe, the chief jailer.

possess some duties with respect to county jails. However, none of these duties relates to the daily operation of the jails or to the supervision of inmates. The duties of the counties with respect to the jails 'are limited to funding the operation of the jail and to providing facilities to house the jail.' Stark v. Madison County, 678 So.2d 787, 787 (Ala.Civ.App. 1996).") Thus, Alabama counties are not charged with the duty of operating jails; instead, it is the county sheriffs who are vested with that responsibility. Section 14-6-1, Ala.Code 1975, provides: "The sheriff has the legal custody and charge of the jail in his county and all prisoners committed thereto...." Alabama law provides that a county commission does not have the authority, or the responsibility, to promulgate policies and work rules for employees of the sheriff's office, nor does a county commission have authority over law-enforcement policies or the training, supervision, hiring, or firing of the sheriff's employees. See Crocker v. Shelby County, 604 So. 2d 350 (Ala. 1992).

* * *

Furthermore, counties cannot be held vicariously liable for the actions or omissions of the sheriff or his deputies in operating a county jail. See King v. Colbert County, 620 So. 2d 623, 625 (Ala.1993), and Parker v. Amerson, 519 So. 2d 442 (Ala. 1987). This Court, construing Art. V, § 112, Ala. Const.1901, and its history, has concluded that a sheriff is an executive officer of the State. Parker, 519 So.2d at 443. This Court has also held that because a sheriff is an executive officer, "a sheriff is not an employee of a county for the purposes of imposing liability on the county...." 519 So. 2d at 442; see also King, 620 So. 2d at 625-26.

Ex parte Sumter County, 953 So. 2d 1235, 1238-1239 (Ala. 2006). Thus, clearly, Walker County had no responsibility to train or supervise either Webb as a sheriff's deputy, or the fictitious defendant Jerry Roe, as the chief jailer. These were the sheriff's responsibility. Walker County cannot be held liable for any misconduct or faults in either the actions of the sheriff's deputies or the daily operation of the jail. Walker County is entitled to be dismissed.

For these reasons, the motion to dismiss Walker County and Sheriff Tirey will be granted and the claims against them dismissed with prejudice.

15

B. *Garve Ivey, Jr.*

Defendant Garve Ivey, Jr., is mentioned explicitly in two counts of the complaint and implicitly in a third.  Plaintiffs allege that Ivey is a private attorney practicing law in Jasper, Alabama, who was retained by Sharon Wade to represent her with respect to her arrest and several other legal matters.  In Count Four of the complaint, plaintiffs allege that Ivey conspired with Corey, Webb, and fictitious defendants John Doe (Oakman police chief) and Richard Roe (Oakman city prosecutor) to deny Sharon Wade her Sixth Amendment right to a speedy trial on the reckless endangerment charge for which she was arrested.  In Count Eleven of the complaint, Sharon Wade alleges state-law claims against Ivey sounding principally in legal malpractice and breach of contract arising out of Ivey's alleged failure to carry out the legal matters entrusted to him by Wade.  Finally in Count Six, Ivey is implicitly included in the allegation that "all named Defendants" committed acts of assault, false arrest, unlawful imprisonment, harassment, and conspiracy, and malicious prosecution against Sharon Wade.  The court finds that all of these claims against Ivey are due to be dismissed.

First, as to Count Four, alleging that Ivey was part of conspiracy to deny Wade her Sixth Amendment right to a speedy trial on the reckless endangerment charge, the complaint fails to allege sufficient facts from which it can be inferred that such a claim of conspiracy is plausible under Twombly.  In being hired to represent Wade on the misdemeanor charge, there is no question that Ivey engaged in conversations with some or all of the alleged co-conspirators.  But what is not alleged sufficiently are facts from which it can be inferred that Ivey did so, not to advance his client's interests, but for the purpose of *depriving* his client of the constitutional right to a speedy trial.  The essence of Count Four's allegation is the supposed agreement among the named defendants to

16

specifically and purposefully deny a constitutional right to Wade.  Under Twombly and Iqbal, the complaint must allege facts that are sufficient to raise this claim to the level of the "plausible," something more than the mere "speculative."  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949-1950, 173 L. Ed. 2d 868 (2009), quoting F.R.Civ.P. 8(a)(2).

In this case, the complaint simply does not allege facts from which it might be inferred plausibly that Ivey deviated from his duty to his client to engage in a conspiracy with the specific purpose of depriving his client of one of her constitutional rights.  Lawyers often seek delays and continuances of trials for the *benefit* of their clients, not for the purpose of depriving them of a constitutional right.  Where the allegations of a conspiracy are vague, the court may dismiss the complaint.   Fullman v. Graddick, 739 F.2d 553 (11th Cir. 1984).  Hence, Count Four of the complaint is due to be dismissed as to defendant Ivey.

Next, Count Eleven of the complaint alleges essentially that Ivey breached his retainer contract with Wade and committed legal malpractice by failing to carry out the legal matters she entrusted to him.  Ivey argues, and the court agrees, that these state-law claims are not within the supplemental jurisdiction of the court under 28 U.S.C. § 1367(a).  The court's subject-matter jurisdiction for this action rests on the federal § 1983 claims made by plaintiff.  See 28 U.S.C. § 1331.  The court may exercise jurisdiction over state-law claims only to the extent that the state-law claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  In 2007, the court of appeals dealt with a claim for legal malpractice under the

17

supplemental jurisdiction statute in Kinsey v. King, 257 Fed. Appx. 136 (11th Cir. 2007).  There the court explained:

> Section 1367(a) authorizes a court to hear supplemental claims to the full extent allowed by the "case or controversy" standard of Article III of the Constitution.  The constitutional "case or controversy" standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim.
>
> Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 742-43 (11th Cir. 2006) (citations omitted).  This requirement is met where the federal and state claims involve the same facts, occurrences, witnesses, and evidence, even where the elements of the state and federal claims differ.

Id. at 138 (citing Palmer v. Hospital Authority of Randolph County, 22 F.3d 1559, 1566-67 (11th Cir. 1994).  In Kinsey, the plaintiffs were represented by Gould, who negotiated a settlement between plaintiffs and two finance companies.  When plaintiffs refused to go through with the settlement, their lawyer, Gould, refused to continue to represent them.  They then sued both the finance companies and Gould, alleging a legal malpractice claim against Gould within the supplemental jurisdiction of the court.  The court of appeals rejected the argument that the legal malpractice claim against Gould was within the same nucleus of operative facts as plaintiffs' claims against the finance companies.  The court wrote:

> Even if the district court erred in dismissing every claim against CitiFinancial and TranSouth for lack of subject matter jurisdiction, the district court would lack the power to exercise supplemental jurisdiction over Gould.  Under Alabama law, all actions against legal service providers that allege a breach of duty in providing legal services are governed by the Alabama Legal Services Liability Act.  Sessions v. Espy, 854 So. 2d 515, 522 (Ala. 2002).

> [I]n a legal malpractice case a plaintiff must prove, basically, the same [elements] that must be proven in an ordinary negligence suit. Thus, the elements [a plaintiff] must prove in order to support his legal malpractice claim are a duty, a breach of that duty, an injury, that the breach was the proximate cause of the injury, and damages. [Additionally,] [i]n a legal malpractice case, the plaintiff must show that but for the defendant's negligence he would have recovered on the underlying cause of action, or must offer proof that the outcome of the case would have been different.

Indep. Stave Co., Inc. v. Bell, Richardson & Sparkman, P.A., 678 So. 2d 770, 772 (Ala. 1996) (citations and quotation marks omitted) (alterations in original).  As discussed above, the Kinseys' claims against Gould arise out of his representation of them in negotiating a settlement agreement and his refusal to continue that representation after the rejection of that agreement.  In contrast, the federal claims the Kinseys attempted to bring against CitiFinancial and TranSouth allege wrongdoing in connection with loans the Kinseys had with these companies.  These federal and state claims do not share a common nucleus of operative facts.

Id. at 139.

The same is true in the instant case.  The federal claims against various defendants all arise out of the arrest, incarceration, and prosecution of Sharon Wade.  Although Wade alleges that Ivey committed legal malpractice in his representation of her, she also admits that the reckless endangerment charge has concluded in her favor.  Ivey's representation of her on other matters is wholly unrelated to her arrest and incarceration.  The trial and resolution of Wade's federal claims for arrest and incarceration without probable cause will involve different "facts, occurrences, witnesses, and evidence," than her claim against Ivey for legal malpractice.  Ivey's role in the case arose after Sharon Wade's arrest and incarceration, and involved legal matters unrelated to the arrest.  In short, the breach of contract and legal malpractice claims against Ivey are not "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy

19

under Article III...."  Count Eleven of the complaint must be dismissed without prejudice for want of subject-matter jurisdiction.

Finally, to the extent that plaintiffs intend to include Ivey in the reference to "all named Defendants" in Count Six, there are no facts alleged to support the contention that Ivey knew of, participated in, or approved of the false arrest, assault, incarceration, or harassment of Sharon Wade. Indeed, plaintiffs allege that it was Ivey who arranged for Sharon Wade's release on bond.  There simply is no factual basis alleged in the complaint for asserting that Ivey is liable to the Wades for assault, false arrest, malicious prosecution, or harassment.  The court already has rejected plaintiffs' allegation of conspiracy on similar grounds — there are no factual allegations plausibly showing that Ivey conspired with any other defendants to do harm to plaintiffs.  Ivey is due to be dismissed from Count Six of the complaint.  Further, all derivative claims for loss of consortium in Count Twelve must be dismissed as to Ivey.

### C.  Kevin and Pam Watkins

Defendants Kevin and Pam Watkins are mentioned explicitly only in Count Eight of the amended complaint and implicitly among "all named Defendants" in Count Six.  In Count Eight, plaintiffs allege that the Watkins committed the state-law torts of stalking, harassment, assault, slander, and conspiracy against Sharon Wade.  Likewise, in Count Six, they allege that the Watkins, along with "all named Defendants," committed the torts of assault, false arrest, unlawful imprisonment, harassment, conspiracy, and malicious prosecution against Sharon Wade.  Although the facts underlying these allegations arise from the same nucleus of operative facts as the plaintiffs' federal claims against Webb, Corey, and others, and thus are within the court's § 1367(a) supplemental jurisdiction, several of these state-law claims are unsupported either by Alabama law

or the facts alleged in the complaint, and must be dismissed.  The court will address each alleged tort in turn.

(i)  <u>Stalking/Harassment</u> — Plaintiffs have pointed to no Alabama authority recognizing a civil action for a tort of stalking, nor has the court identified any such authority.  It is possible, however, that such conduct as stalking and harassment might be behavior covered by the tort of outrage, which is recognized in Alabama.  <u>See e.g.</u> <u>Woodley v. City of Jemison</u>, 770 So. 2d 1093 (Ala. Civ. App. 1999).  Conduct so outrageous that it is beyond the bounds of civilized behavior may well give rise to tort liability in favor of an injured party.  As the tort of outrage has been described:

> "[W]illful wrongs, or those made so recklessly as to equate willfulness, authorize recovery in damages for the mental suffering caused thereby, and we now recognize that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress.  The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it.  Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme.  Comment, RESTATEMENT [ (SECOND) OF TORTS, § 46 (1965) ], at 78.  By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. Comment (d), RESTATEMENT, supra at 72."

<u>Woodley v. City of Jemison</u>, 770 So. 2d 1093, 1096 (Ala. Civ. App. 1999) quoting <u>American Road Service Co. v. Inmon</u>, 394 So. 2d 361, 365 (Ala. 1980).  To constitute such a tort, however, the conduct must be "extreme," such that no reasonable person could be expected to endure it.  Conduct is "extreme" only if it is "so outrageous in character and so extreme in degree as to go beyond all

possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."

The facts alleged in this case simply fail to describe such "extreme" conduct by the Watkins. What plaintiff alleges here is that the Watkins followed her as she drove from one location to another, and that they confronted her at one point, demanding that she allow Effie Watkins to leave with them. While this conduct was unquestionably stressful and emotional, it was not so extreme that no reasonable person could be expected to endure it. The conduct of the Watkins, as described by plaintiffs, simply was not "atrocious" or "outrageous" or "intolerable" or "beyond all possible bounds of decency." The facts alleged simply fail to show that a tort of outrage occurred. Consequently, the Watkins are entitled to dismissal of this claim.

(ii) <u>Assault</u> — The civil tort of assault is defined in Alabama law as follows:

> "Assault" has been defined as "an *intentional*, unlawful, offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented." <u>Western Union Tel. Co. v. Hill</u>, 25 Ala. App. 540, 542, 150 So. 709, 710 (1933) (emphasis added). See also <u>Wright v. Wright</u>, 654 So. 2d 542, 544 (Ala. 1995). In a civil case, the elements of battery are: (1) that the defendant touched the plaintiff; (2) that the defendant *intended* to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner. <u>Ex parte Atmore Cmty. Hosp.</u>, 719 So. 2d 1190 (Ala.1998) (emphasis added). Our Supreme Court has explained that "'[a] battery consists in an injury actually *done to the person of another in an angry or revengeful or rude or insolent manner*, as by spitting in the face, or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another.'" <u>Surrency v. Harbison</u>, 489 So. 2d 1097, 1104 (Ala. 1986) (quoting <u>Singer Mach. Co. v. Methvin</u>, 184 Ala. 554, 561, 63 So. 997, 1000 (1913) (emphasis added)).

Wood v. Cowart Enterprises, Inc., 809 So. 2d 835, 837 (Ala. Civ. App. 2001)(emphasis in original).

The court notes that plaintiffs allege only an "assault" tort theory, and not a "battery" or "assault and battery." As alleged by plaintiffs, Kevin Watkins approached Sharon Wade's car, reached in through the window to grab the ignition key from her hand, and in doing so inadvertently knocked the gear-shift lever out of the park position, causing the car to begin to role. This appears to allege that Kevin Watkins touched Sharon Wade's hand in doing so. Even so, the plaintiffs have chosen to sue only for assault, and not for battery.

At the outset, there is no allegation that Pam Watkins made any threat or "offer to touch" Sharon Wade. Thus, there can be no claim for assault against her, and she is entitled to dismissal of this claim. Kevin Watkins, however, is alleged to have grabbed Wade's ignition key from her hand, clearly indicating that at least he "offered to touch" in a rude or angry manner. The complaint is sufficient to allege a tort of assault by Kevin Watkins, so that his motion to dismiss this particular claim must be denied.

(iii) Slander — The tort of slander is one version of the tort of defamation. The elements of a slander claim are as follows:

> To establish a prima facie case of defamation, of which slander is a branch, "'the plaintiff must show that the defendant was at least negligent ... in publishing a false and defamatory statement to another concerning the plaintiff.'" Warren, 739 So. 2d at 1132 (quoting Nelson v. Lapeyrouse Grain Corp., 534 So. 2d 1085, 1091 (Ala.1988)). Even when the statement is not actionable per se, ... , a plaintiff may maintain "'"an action for slander [*per quod*] founded on oral malicious defamation subjecting the plaintiff to disgrace, ridicule, odium, or contempt"'" if that plaintiff alleges and proves "'"special damages."'" Butler v. Town of Argo, 871 So. 2d at 17 (quoting Ceravolo v. Brown, 364 So. 2d 1155, 1157 (Ala.1978), quoting in turn Marion v. Davis, 217 Ala. 16, 18, 114 So. 357, 359 (1927)). "'Special damages are the material harms that are the intended result or natural consequence of the slanderous statement, and the general rule is that they are limited to "material loss

capable of being measured in money.""" <u>Butler</u>, 871 So. 2d at 18 (quoting <u>Shook v.</u>
<u>St. Bede Sch.</u>, 74 F. Supp.2d 1172, 1180 (M.D. Ala.1999))(internal citations
omitted).

<u>Casey v. McConnell</u>, 975 So. 2d 384, 390 (Ala. Civ. App. 2007). Earlier cases have stated that the

communication of the defamatory statement must be "unprivileged," recognizing that there are some

circumstances under which there is a countervailing policy to protect negligent, untrue statements.

<u>See, e.g.</u>, <u>Dudley v. Bass Anglers Sportsman Society</u>, 777 So. 2d 135, 140 (Ala. Civ. App. 2000);

<u>Drill Parts & Service Co. v. Joy Manufacturing Co.</u>, 619 So. 2d 1280, 1289 (Ala. 1993) (quoting

<u>McCaig v. Talladega Publishing Co.</u>, 544 So.2d 875, 877 (Ala.1989)). A communication to police

as part of an investigation is conditionally privileged, and a claim for defamation can exist only if

the plaintiff can allege and prove that the statement was made with "actual malice," that is, hostility,

ill will, animosity, anger, or rivalry toward the plaintiff. <u>See</u> <u>Tidwell v. Winn-Dixie, Inc.</u>, 502 So. 2d

747, 748 (Ala. 1987).

In this case, plaintiff alleges that Pam Watkins and Kevin Watkins made defamatory

statements to Officer Webb during the confrontation at the Oakman police station. It is alleged that

Pam Watkins said, "You've got her where you want her now, she left her mother in a hot car."

Kevin Watkins is alleged to have said, "She's going to get away. She's going to get away," when

the plaintiff's car began to role after it was knocked out of park. Neither of these statements were

false or defamatory. Plaintiff admits that she had left Effie Watkins in the car when she got out to

speak to Officer Webb. The phrase, "You've got her where you want her now," speaks to Officer

Webb's potential motivation and says nothing defamatory about Sharon Wade. Likewise, the

statement, "She's going to get away," is not defamatory. It does not accuse Wade of any felonious

conduct, nor does it ridicule her or lessen her in the eyes of the community.  It simply is not

defamatory.  Both defendants Pam and Kevin Watkins are entitled to dismissal of the slander claim

against them.

      (iv) <u>Conspiracy</u> — Under Alabama law, tort liability can exist for a claim of

conspiracy only when there exists some other tortious wrong committed by the defendants.  The

Alabama courts have explained that "'[c]onspiracy itself furnishes no civil cause of action.' <u>Triple</u>

<u>J Cattle, Inc. v. Chambers</u>, 621 So.2d 1221, 1225 (Ala. 1993).  There must be an underlying wrong

to support the conspiracy claim.  <u>Ex parte Alabama Department of Transportation</u>., 764 So.2d 1263,

1271 (Ala.2000)."  <u>Tillman v. R.J. Reynolds Tobacco Co.</u>, 871 So. 2d 28, 35 (Ala. 2003).  "A

conspiracy cannot exist in the absence of an underlying tort.  '[L]iability for civil conspiracy rests

upon the existence of an underlying wrong and if the underlying wrong provides no cause of action,

then neither does the conspiracy.'"  <u>Willis v. Parker</u>, 814 So. 2d 857, 867 (Ala. 2001)(quoting <u>Jones</u>

<u>v. BP Oil Co.</u>, 632 So. 2d 435, 439 (Ala.1993)).  In <u>Swann v. Regions Bank</u>, 17 So. 3d 1180 (Ala.

Civ. App. 2008), the Alabama Court of Civil Appeals again noted that, when there are no underlying

tortious wrongs, a claim of conspiracy fails as a matter of law.  The court said:

> "Civil conspiracy is a combination of two or more persons to accomplish an unlawful
> end or to accomplish a lawful end by unlawful means." <u>Keith v. Witt Auto Sales,</u>
> <u>Inc.</u>, 578 So. 2d 1269, 1274 (Ala. 1991) (citing <u>Eidson v. Olin Corp.</u>, 527 So. 2d
> 1283 (Ala. 1988)).  "The gist of an action alleging civil conspiracy is not the
> conspiracy itself, but rather, the wrong committed." 578 So. 2d at 1274 (citing <u>Sadie</u>
> <u>v. Martin</u>, 468 So. 2d 162 (Ala. 1985).  For that reason, "[a] civil conspiracy cannot
> exist in the absence of an underlying tort." <u>Goolesby v. Koch Farms, LLC</u>, 955
> So. 2d 422, 430 (Ala. 2006) (citing <u>Avis Rent A Car Sys., Inc. v. Heilman</u>, 876
> So.2d 1111, 1124 (Ala. 2003)).  Because all other claims asserted by [plaintiff]
> have been dismissed, there is no underlying tort claim that could possibly support her
> conspiracy claim; as a result, her conspiracy claim fails as a matter of law.

Id. at 1194-1195.

As discussed above, except for plaintiffs' claim of assault against Kevin Watkins, there is no underlying tort claim sufficiently pleaded against the Watkins. Although it is clearly alleged that the Watkins themselves were acting in concert with one another, the complaint simply fails to allege an underlying tort wrong that was the purpose of the alleged conspiratorial agreement between Pam and Kevin Watkins. Further, no facts are alleged to support the inference that the Watkins had any conspiratorial agreement with any other named defendant. Moreover, there are no allegations of fact supporting an inference that Pam Watkins had a preexisting conspiratorial agreement with her husband to assault Sharon Wade. The Watkins are entitled to the dismissal of the conspiracy claim against them.

(v) False Arrest/Unlawful Imprisonment/Malicious Prosecution — Although not mentioned explicitly in Count Six of the amended complaint, the Watkins are among the "all named Defendants" against whom the claims in that count are alleged. In addition to claims of assault, harassment, and conspiracy, all of which have been discussed above with respect to the Watkins, Count Six alleges claims for false arrest, unlawful imprisonment, and malicious prosecution. The Watkins are also entitled to dismissal of these claims.

Alabama Code § 6-5-170 (1975) defines the tort of false imprisonment as, "False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." See City of Bayou La Batre v. Robinson, 785 So. 2d 1128, 1131 (Ala. 2000). The elements of a malicious prosecution claim are "(1) that the present defendant instituted a prior judicial proceeding against the present plaintiff; (2) that in instituting the prior proceeding the present defendant acted without probable cause and with malice; (3) that the

prior proceeding ended in favor of the present plaintiff; and (4) that the present plaintiff was damaged as a result of the prior proceeding."  Wal-Mart Stores, Inc. v. Goodman, 789 So. 2d 166, 174 (Ala. 2000).  With respect to claims of false arrest and false imprisonment, the Alabama Court of Civil Appeals has observed:

> Moreover, it is true, ..., that "persons other than those who actually effect an arrest or imprisonment may be so involved with or related to the act or proceeding as instigators or participants therein as to be liable for false imprisonment." Id. at 654. Stated another way, "[o]ne who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment." RESTATEMENT (SECOND) OF TORTS § 45A (1965).
>
> However, ..., the force of that black-letter rule of law is tempered by the principle that "liability for false imprisonment, like liability for malicious prosecution, cannot be predicated merely on ... a person's good faith act of identifying one suspected of a crime" because such an act "is not regarded in the law as an instigation of or participation in the detention or arrest." Crown Central, 679 So. 2d at 654.  The American Law Institute, in its commentary to § 45A of the RESTATEMENT, aptly summarized what does and does not constitute "instigation" of another's confinement:

>> Instigation consists of words or acts which direct, request, invite or encourage the false imprisonment itself. *In the case of an arrest, it is the equivalent, in words or conduct, of 'Officer, arrest that man!'* It is not enough for instigation that the actor has given information to the police about the commission of a crime, *or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them.* Likewise it is not an instigation of a false arrest where the actor *has requested the authorities to make a proper and lawful arrest, and has in no way invited or encouraged an improper one*, or where he has requested an arrest at a time when it would be proper and lawful, and it is subsequently made at a time when it has become improper."

> RESTATEMENT (SECOND) OF TORTS § 45A, Comment c (emphasis added).

Dolgencorp, Inc. v. Pounders, 912 So. 2d 523, 528 (Ala .Civ. App. 2005)(emphasis in original quotation)(quoting Crown Central Petroleum Corp. v. Williams, 679 So. 2d 651, 653 (Ala. 1996)); see also Crutcher v. Wendy's of North Alabama, Inc., 857 So. 2d 82, 89-90 (Ala. 2003).

Under the facts as alleged in the complaint, the Watkins did not "initiate" the arrest, imprisonment, and prosecution of Sharon Wade.  While it might be argued that they accused Wade of a crime ("You've got her where you want her now, she left her mother in a hot car"), the decision to arrest and charge her with an offense was entirely that of Officer Webb, based on his own observations at the time.  There is no allegation that the Watkins supplied false information to Officer Webb that formed part of the basis of his decision to arrest Wade.  There is no basis for inferring plausibly that they sought to have Webb make an "improper" arrest.  While they surely urged Webb to make an arrest, he did so, even under the facts pleaded in the complaint, based entirely on his own observations at the scene.  Certainly as to whether Wade would be prosecuted for reckless endangerment, the complaint alleges no facts supporting a plausible inference that the Watkins were involved at all.  Whether the prosecution would go forward was the decision of fictitious defendant Richard Roe, the Oakman city prosecutor.  Thus, on the facts alleged in the complaint, there is no basis under Twombly for finding a plausible claim against the Watkins for false arrest, unlawful imprisonment, or malicious prosecution, and they are entitled to dismissal of these claims against them in Count Six of the amended complaint.

## Conclusion

Based on the foregoing considerations, the court will enter an order GRANTING the motion to dismiss by defendants Walker County and Sheriff John Mark Tirey; GRANTING the motion to

dismiss by defendant Garve Ivey, Jr.; GRANTING IN PART AND DENYING IN PART the motion

to dismiss by defendant Kevin Watkins; and GRANTING the motion to dismiss by defendant Pam

Watkins.  A separate order will be entered.

DONE this 7th day of May, 2010.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE